Karim BAMBA, Petitioner,

v.

Kenneth ELWOOD, District Director of
the Philadelphia Office of the Immi-
gration and Naturalization Service,
Respondent.

Civil Action No. 02–8430.

United States District Court,
E.D. Pennsylvania.

March 27, 2003.

Derek Gray, Steel Rudnick & Ruben, Philadelphia, PA, for Petitioner.

Stephen J. Britt, Philadelphia, PA, for Respondent.

### MEMORANDUM

DuBOIS, District Judge.

## I. INTRODUCTION

Petitioner, Karim Bamba, an alien from the Republic of the Ivory Coast ("Ivory Coast"), is presently detained in the Berks County Prison, Leesport, Pennsylvania. He is subject to a final order of removal as a result of a 1998 conviction for bank fraud in the United States District Court for the Eastern District of Pennsylvania.

Presently before the Court is petitioner's Petition for Writ of Habeas Corpus, filed pursuant to 28 U.S.C. § 2241. He seeks relief from the removal order on two grounds: first, petitioner claims that, as a person paroled into the United States, he is not "deportable" under the expedited removal proceedings of 8 U.S.C. § 1228(b), and second, even if petitioner is subject to the expedited removal proceedings of 8 U.S.C. § 1228(b), application of the statute in his case violates his due process rights. Upon consideration of the record and applicable law, the Court concludes that petitioner's claims are without merit and denies the Petition.

## II. BACKGROUND

The Court first sets forth the relevant facts and procedural history with respect to the removal order underlying the Petition. The facts are taken from the exhibits attached to the Petition and from matters of public record.

On July 1, 1987, petitioner first entered the United States as a visitor. *See Matter of Karim Bamba,* No. A 93 007 199, at 6 (Immigr. Ct. June 10, 2002) (Transcript of Removal Proceedings, appended to Petition at Exhibit A) ("Immigration Court Transcript"). *See id.*

Petitioner left the United States for one month in 1993 to visit his family in the Ivory Coast. *See id.* at 7–10. While there, he was arrested, beaten, and briefly detained by the army. *See id.* at 10. Petitioner returned to the Ivory Coast in 1995 because of his mother's death. *See id.* at 12–15. Prior to traveling to the Ivory Coast, petitioner sought and received from the Immigration and Naturalization Service ("INS") advance parole [1] to re-enter

---

**1.** A "paroled" alien is one who is temporarily permitted to remain in the United States pending a decision on an application for admission to the United States. *See* 8 U.S.C. § 1182(d)(5). Although a "paroled" alien is "given liberty to roam the country," the alien is considered legally detained at the border within the custody of the Immigration and Naturalization Service ("INS") as it determines the alien's immigration status. *Cha-*

*vez–Rivas v. Olsen,* 207 F.Supp.2d 326, 328 (D.N.J.2002). In the context of an alien's initial entry, "[parole] amounts to permission by the Attorney General for ingress into the country but is not a formal 'admission' " under the Immigration and Naturalization Act ("INA"). *Chi Thon Ngo v. INS,* 192 F.3d 390, 392 (3d Cir.1999) (citations omitted); *see also* 8 U.S.C. § 1182(d)(5)(A).

the United States upon his return. *See* Dep't of Justice, INS, Authorization for Parole of an Alien into the United States (Mar. 15, 1996) (appended to Petition at Exhibit C) ("INS Parole Authorization"). While in the Ivory Coast, petitioner claims he was harassed by members of the army and beaten with clubs when he tried to flee. Immigration Court Transcript, *supra*, at 12, 15–16. On October 25, 1995, he was paroled back into the United States.

On December 24, 1997, petitioner was charged in the United States District Court for the Eastern District of Pennsylvania with one count of bank fraud in violation of 18 U.S.C. § 1344.[2] *United States v. Bamba*, Crim. A. No. 98–86 (E.D. Pa. filed Dec. 24, 1997). He pled guilty to an Information[3] on March 16, 1998, and on July 17, 1998, he was sentenced to time served (which amounted to three months), three years of supervised released and a fine of $500.00. *See* Gov't Mem. of Law at 2.[4] He was released from custody in March 1998, and completed his supervised release on June 10, 2001. *See* Letter from Barry

W. Polsky, Chief U.S. Probation Officer, and Marilyn Y. Bradley, U.S. Probation Officer, to Karim Bamba (Jan. 31, 2002) (appended to Petition at Exhibit D).

On March 2, 2001, the INS detained petitioner and placed him in expedited removal proceedings under 8 U.S.C. § 1228(b).[5] *See* Dep't of Justice, INS, Warrant for Arrest of Alien, at 1 (appended to Petition at Exhibit E). On April 23, 2001, the INS issued a Final Administrative Removal Order, in which the INS found petitioner "deportable" by clear and convincing evidence as a nonpermanent resident alien convicted of an aggravated felony. *See* Final Administrative Removal Order (appended to Petition at Exhibit F).

Between May and June 2001 petitioner filed an application for withholding of removal and for relief under the United Nations Convention Against Torture and Other Cruel, Inhuman or Degrading Treatment or Punishment, Dec. 10, 1984, 23 I.L.M. 1027 (1984), *as modified*, 24 I.L.M. 535 (1985) ("Convention Against Torture").[6] In his application, petitioner

---

Parole is granted in some situations in advance of an alien's travel to the United States. Advance parole may be authorized, when appropriate, for noncitizens seeking to come to the United States and for noncitizens in the United States seeking to leave temporarily with assurance that they will be permitted to return. *See* 5 Charles Gordon, et al., *Immigration Law and Procedure* § 62.02[2], at 62–13 (Rev. ed.2002).

2. That statute provides for criminal liability for anyone who "knowingly executes, or attempts to execute, a scheme or artifice—(1) to defraud a financial institution; or (2) to obtain

... property owned by ... a financial institution, by means of false or fraudulent pretenses, representations, or promises...."

3. The Information charged that, as part of the bank fraud, petitioner transmitted two stolen United States Treasury checks, in the amounts of $10,055.13 and $14,792.52, made

payable to Alliant Foodservice. Information ¶ 7, *United States v. Bamba*, Crim. A. No. 98–86 (E.D. Pa. filed Dec. 24, 1997) (Document No. 15, filed February 23, 1998).

4. The sentence, below the guideline range set forth in the United States Sentencing Guidelines, was based on the district court's granting of the Government's Motion for a downward departure under § 5K1.1 of the Guidelines for substantial assistance.

5. The law governing the expedited removal proceedings is detailed in § III.B of this Memorandum, *infra*.

6. Both withholding of removal and relief under the Convention Against Torture are humanitarian classifications under U.S. immigration law designed to protect individuals from designated countries for temporary periods. Aliens applying for withholding of removal must demonstrate "persecution or a well-founded fear of persecution on account

claimed that he feared persecution and torture based on his religion and tribe membership if returned to the Ivory Coast. An INS asylum officer denied his request. An Immigration Judge reviewed that decision and found that petitioner had a reasonable fear of persecution and therefore could pursue an application for withholding of removal and for relief under the Convention Against Torture. *See Matter of Karim Bamba*, No. A 93 007 199, at 1–2 (Immigr. Ct. June 10, 2002) (Oral Decision of the Immigration Judge, appended to Petition at Exhibit A) ("Oral Decision of Immigration Judge"). Accordingly, the Immigration Judge scheduled a hearing on petitioner's application for withholding of removal and for relief under the Convention Against Torture.

At the hearing on June 10, 2002, the Immigration Judge found petitioner ineligible for withholding of removal or for relief under the Convention Against Torture. *See id.* at 4–8. Before rendering her decision, the Immigration Judge noted that petitioner was placed in expedited removal proceedings because of his conviction for bank fraud in which the loss was over $10,000. *See id.* at 2. The Immigration Judge then determined that petitioner's conviction for bank fraud constituted an "aggravated felony" [7] and that withholding of removal under § 1231(b)(3) normally is not available to an alien who has

committed "a particularly serious crime" that makes the alien "a danger to the community." *See id.; see also* 8 U.S.C. § 1231(b)(3)(B)(ii). However, the Immigration Judge concluded that bank fraud, the offense for which petitioner had been convicted, did not make him ineligible to apply for withholding of removal. *See* Oral Decision of Immigration Judge, *supra*, at 4.

In determining that petitioner was ineligible for removal, the Immigration Judge relied on a report from the U.S. Department of State which stated that although members of petitioner's tribe had suffered discrimination, relations between the tribes generally were amicable. *See id.* at 5. She concluded that petitioner's testimony was weak and did not contradict the facts set forth in the State Department report. *See id.* at 6. Specifically, the Immigration Judge ruled that petitioner had not met his burden of establishing eligibility for withholding of removal or protection pursuant to the Convention Against Torture because he (1) did not produce any corroborating evidence except for several newspaper articles, and (2) did not demonstrate a specific danger to his family. *See id.* at 6–8. Petitioner appealed the Immigration Judge's decision to the Board of Immigration Appeals ("BIA"), which summarily affirmed the Immigration Judge's decision on November 6, 2002. *See In re*

---

of race, religion, nationality, membership in a particular social group, or political opinion." 8 C.F.R.

§ 208.16(b)(1). If eligibility is demonstrated, a grant of withholding of removal is an " 'absolute prohibition against removal.' " *Sulaiman v. Attorney General*, 212 F.Supp.2d 413, 415 n. 3 (E.D.Pa.2002) (quoting Anna Gallagher, Glossary to *Immigration Law Service 2d* (West 2003)).

The Convention Against Torture prohibits a state party from "expel[ling] ... a person to another state where there are substantial grounds for believing that he or she would be

in danger of being subjected to torture." Convention Against Torture, *supra*. "Aliens seeking protection under the Convention Against Torture ... must meet a lower standard [than for withholding of removal]; they need only show 'that it is more likely than not that he or she would be tortured if removed to the proposed country of removal.' " *Id.* at 418 (quoting 8 C.F.R. § 208.16(c)(2)).

7. An "aggravated felony" is defined as, *inter alia*, "an offense that involves fraud or deceit in which the loss to the victim or victims exceeds $10,000." 8 U.S.C. § 1101(a)(43)(M)(I).

*Karim Bamba,* No. A93–007–199 (BIA Nov. 6, 2002) (appended to Petition at Exhibit I) ("BIA Decision").

On November 12, 2002, petitioner filed the instant Petition pursuant to 28 U.S.C. § 2241. As will be explained in § III.A of this Memorandum, *infra,* this Court does not have jurisdiction over factual determinations made by the Immigration Judge and the BIA regarding the reasonableness of petitioner's fear of persecution upon his return to the Ivory Coast. It does, however, have jurisdiction to address any claims that his removal violated the Constitution or federal law.

Petitioner raises two such claims in the Petition: (1) as a person paroled into the United States, he is not "deportable" under the expedited removal proceedings of 8 U.S.C. § 1228(b), and (2) even if petitioner is subject to 8 U.S.C. §. 1228(b), application of the statute in his case violates his procedural due process rights.

In addition to the Petition, petitioner filed a Motion for Stay of Removal/Deportation. *See* Petitioner's Motion for Stay of Removal/Deportation (appended to Petition at Exhibit J). In that Motion, petitioner argued that a stay should be granted so as to enable the Court to consider the Petition on its merits. *See id.* The Court granted petitioner's Motion for Stay of Removal/ Deportation by Order dated November 15, 2002.

As discussed below, the Court concludes that neither of petitioner's claims for relief are meritorious. Accordingly, the Court denies the Petition.

## III. *APPLICABLE LAW*

### A. FEDERAL COURT REVIEW OF ADMINISTRATIVE DECISIONS OF THE IMMIGRATION AND NATURALIZATION SERVICE

Despite the limitations on federal court review of executive branch deportation and removal decisions set forth in the Antiterrorism and Effective Death Penalty Act of 1996, Pub.L. No. 104–132, 110 Stat. 1214 ("AEDPA") and the Illegal Immigration Reform and Immigrant Responsibility Act of 1996, Pub.L. No. 104–208, Div. C, 110 Stat. 3009–506 ("IIRIRA"), it is well established that federal courts retain jurisdiction under 28 U.S.C. § 2241(c) to decide habeas petitions filed by criminal aliens subject to deportation or removal. *See Chmakov v. Blackman,* 266 F.3d 210, 213 (3d Cir.2001) ("Both the Supreme Court and this Court have determined that notwithstanding the provisions of AEDPA or IIRIRA, district courts retain jurisdiction to hear habeas petitions filed by aliens subject to deportation for having committed certain criminal offenses." (citing *Zadvydas v. `Davis,* 533 U.S. 678, 688, 121 S.Ct. 2491, 150 L.Ed.2d 653 (2001); *INS v. St. Cyr,* 533 U.S. 289, 314, 121 S.Ct. 2271, 150 L.Ed.2d 347 (2001))). The scope of review of such claims is, however, limited to questions of law. *Catney v. INS,* 178 F.3d 190, 195 (3d Cir.1999) ("[F]ollowing passage of AEDPA and IIRIRA, we no longer have jurisdiction to review a denial of discretionary relief to a criminal alien."); *see also Sol v. INS,* 274 F.3d 648, 651 (2d Cir.2001) ("[F]ederal jurisdiction over § 2241 petitions does not extend to review of discretionary determinations by the [Immigration Judge] and BIA."); *Bowrin v. INS,* 194 F.3d 483, 490 (4th Cir.1999) ("Only questions of pure law will be considered on § 2241 habeas review. Review of factual or discretionary issues is prohibited."); *Bradshaw v. INS,* Civ. A. No. 5221, 2002 WL 1160832, at *1 (E.D. Pa. June 3, 2002) (citing *Sol,* 274 F.3d at 651); *see also St. Cyr,* 533 U.S. at 312, 121 S.Ct. 2271 (noting that scope of review in habeas corpus cases is "far narrower" than that authorized by Administrative Procedure

Act (citing *Heikkila v. Barber*, 345 U.S. 229, 236, 73 S.Ct. 603, 97 L.Ed. 972 (1953))).

## B. PROCEDURE UNDER THE INA

Before the enactment of the IIRIRA, the Immigration and Nationality Act ("INA") divided undesirable aliens into two classes: "excludable" aliens and "deportable" aliens. Aliens who were past the point of entry and who were physically present in the United States, even illegally, were classified as "deportable" and entitled to a deportation hearing. *See Cuesta Martinez v. INS*, 97 F.Supp.2d 647, 649 (M.D.Pa.2000). Aliens at the border and seeking entry into the United States, or aliens who were ineligible for admission, were classified as "excludable" and subject to exclusion procedures. *See id.* An excludable alien was eligible for parole[8] into the United States under certain circumstances, but under the "entry fiction" doctrine[9] was still considered to be at the border awaiting entry. *See id.* Aliens in deportation proceedings had greater constitutional and procedural protections than aliens in exclusion proceedings. *See Landon v. Plasencia*, 459 U.S. 21, 25, 103 S.Ct. 321, 74 L.Ed.2d 21 (1982); *see generally* 5 Charles Gordon, et al., *Immigration Law and Procedure* § 65.02[1] (Rev. ed.2002).

Under the IIRIRA, the constitutional protections accorded an alien no longer turn on whether an alien has gained "entry," but rather depend on whether the alien has been "admitted" into the United States. *See Chi Thon Ngo v. INS*, 192 F.3d 390, 395 n. 4 (3d Cir.1999). Thus, aliens who enter without inspection, together with "excludable" aliens who are inspected but denied admission, are now classified as "inadmissible" aliens because they were not officially admitted into the United States. *See* 8 U.S.C. § 1101(a)(13)(A). Inadmissible aliens, like excludable aliens, are "afforded less constitutional protection" than admitted aliens. *See Alaka v. Elwood*, 225 F.Supp.2d 547, 556 n. 44 (E.D.Pa.2002).

Although the post-IIRIRA test is no longer "entry," but "admission," the Supreme Court, in *Zadvydas*, 533 U.S. at 693, 121 S.Ct. 2491, stated that the protections of the Due Process Clause applied to those inadmissible aliens whose presence in the United States was illegal:

> The distinction between an alien who has effected an entry into the United States and one who has never entered runs throughout immigration law. . . . It is well established that certain constitutional protections available to persons inside the United States are unavailable to aliens outside our geographic borders. . . . *But once an alien enters the country, the legal circumstance changes, for the Due Process Clause applies to all "persons" within the United States, including aliens, whether their presence here is lawful, unlawful, temporary, or permanent.*

*Id.* at 693, 121 S.Ct. 2491 (citations omitted) (emphasis added); *Fernandez–Fajardo v. INS*, 193 F.Supp.2d 877,—884–85 (M.D.La.2001) (concluding "that *Zadvydas* only places a 'reasonable time' limitation on the post-removal-period detention of

---

8. The term "parole" has specialized meaning in the lexicon of immigration law, and is discussed in footnote 1, *supra.*

9. The "entry fiction" doctrine treats an excludable alien as legally detained at the bor-

der despite his physical presence in the United States. *See Shaughnessy v. United States ex rel. Mezei*, 345 U.S. 206, 212, 73 S.Ct. 625, 97 L.Ed. 956 (1953); *Fernandez–Fajardo v. INS*, 193 F.Supp.2d 877, 885 (M.D.La.2001).

aliens who have indeed entered the country").[10]

The IIRIRA also consolidated the former exclusion and deportation proceedings into one "removal" proceeding. *See* 8 U.S.C. § 1229a(a)(3). Section 1229a(a)(3) provides that the removal procedure set forth in § 1229a is the "exclusive procedure" for expulsion of aliens, except as "otherwise specified" in the INA. Section 1228(b), the provision challenged by petitioner in this case, provides for the expedited removal of certain aliens as follows:

> (1) The Attorney General may, in the case of an alien described in paragraph (2), determine the deportability of such alien under section 1227(a)(2)(A)(iii) of this title (relating to conviction of an aggravated felony) and issue an order of removal pursuant to the procedures set forth in this subsection or section 1229a of this title.
>
> (2) An alien is described in this paragraph if the alien—
>
> > (A) was not lawfully admitted for permanent residence at the time at which proceedings under this section commenced; or
> >
> > (B) had permanent resident status on a conditional basis (as described in section 1186a of this title) at the time that proceedings under this section commenced.

8 U.S.C. § 1228(b). That provision refers to 8 U.S.C. § 1227(a)(2)(A)(iii), which provides that "[a]ny alien who is convicted of an aggravated felony at any time after admission is deportable."

**10.** The Court notes that two circuits have recently held that aliens paroled into the United States, who are therefore deemed to be inadmissible aliens, are entitled to the same implicit reasonable time limitation on the

## IV.  DISCUSSION

### A.  THE EXPEDITED REMOVAL PROCEDURES OF 8 U.S.C. § 1228(B) APPLY TO PETITIONER

#### 1.  *Petitioner, as a Parolee, Was Not Lawfully Admitted For Permanent Residence In the United States at the Time Expedited Removal Proceedings Were Commenced Against Him*

██ The expedited removal proceedings set forth in 8 U.S.C. § 1228(b) apply "in the case of an alien described in paragraph 2 ..." who is convicted of an aggravated felony. § 1228(b)(1). Paragraph 2 of § 1228 describes an alien for purposes of paragraph 1 as, *inter alia,* a person who "was not lawfully admitted for permanent residence at the time at which proceedings under this section commenced ...." § 1228(b)(2). Petitioner admits he was "not lawfully admitted for permanent residence" at the time expedited removal proceedings were commenced against him. *See* Petition at 9. To the contrary, he was paroled into the United States. *See id.; see also* INS Parole Authorization, *supra.* Thus, petitioner has satisfied this criterion for application of the expedited removal proceedings. *See Prosper v. Elwood,* 54 Fed.Appx. 38, 40 (3d Cir.2002) (adopting similar analysis for aggravated felon alien who had sought to remove conditional basis of his status).

#### 2.  *Petitioner Was Convicted of an "Aggravated Felony" as Defined in 8 U.S.C. § 1227(a)(2)(A)(iii)*

██ Petitioner argues that the question whether an alien subject to expedited re-

post-removal-period detention as aliens who have physically entered the country. *See Rosales–Garcia v. Holland,* 322 F.3d 386 (6th Cir.2003) (en banc); *Lin Guo Xi v. INS,* 298 F.3d 832, 835 (9th Cir.2002).

moval as an aggravated felon under 8 U.S.C. § 1228(b) must be determined with reference to 8 U.S.C. § 1227(a)(2)(A)(iii). The latter section of the INA provides that "[a]ny alien who is convicted of an aggravated felony at any time after *admission* is deportable." § 1227(a)(2)(A)(iii) (emphasis added). Petitioner claims that "admission" into the United States is a condition precedent for expedited removal as an aggravated felon and, as a parolee, he was not admitted into the United States. Therefore, according to petitioner, he cannot be subject to expedited removal under § 1228(b).

The Court rejects petitioners' argument that the expedited removal proceedings under § 1228(b) are applicable only if an alien is convicted of an aggravated felony after admission into the United States. That conclusion is dictated by the plain language of the two statutes— §§ 1228(b) and 1227(a)(2)(A)(iii). Expedited removal under § 1228(b) is applicable only to aliens not lawfully admitted who are convicted of an aggravated felony. If, as petitioner argues, admission is required in order to authorize expedited removal as an aggravated felon, § 1228(b) would be a nullity— no alien would qualify for expedited removal.

Additionally, case law does not support petitioner's reading of the expedited removal statute. Although the Third Circuit has yet to address the question whether § 1228(b) applies to parolees, the Seventh Circuit, in *Bazan–Reyes v. INS*, 256 F.3d 600 (7th Cir.2001), rejected the precise argument petitioner raises in the instant case. In *Bazan–Reyes*, the petitioner had been placed in expedited removal proceedings under § 1228(b) following a conviction under state law for driving while intoxicat-

ed. *Id.* at 602–03. On appeal, the petitioner challenged his placement in expedited removal proceedings under § 1228(b) because he was paroled into the United States. *Id.* at 604–05. He based his argument on § 1228's reference to § 1227(a)(2)(A)(iii), which, as stated above, provides that "[a]ny alien who is convicted of an aggravated felony at any time after admission is deportable." The *Bazan–Reyes* court concluded that "[n]othing in [§ 1228(b)] prohibits its application to parolees," noting that prohibiting its application to parolees "would provide more favorable treatment for parolees than for lawfully admitted aliens." *Id.* at 605. Instead, the court ruled "it more plausible that the reference to § 1227(a)(2)(A)(iii) [in § 1228(b)] simply operates to . . . elucidate which non-lawful resident aliens may be placed in expedited proceedings." *Id.* This Court finds the reasoning of the *Bazan–Reyes* court persuasive.

Petitioner argues that *Bazan–Reyes* should not be relied upon in this case because it has been superceded by a more recent decision in the same circuit, *Dimenski v. INS*, 275 F.3d 574 (7th Cir.2001). However, the issue before the *Dimenski* panel was whether an alien last paroled into the United States in 1993 should have been placed in deportation, rather than exclusion, proceedings,[11] when the INS commenced the proceedings in 1996. *Id.* at 576. The panel ruled that exclusion was "the right device" because the petitioner was placed in such proceedings in 1996, prior to the effective date of the IIRIRA, April 1, 1997. *Id.* at 577. In *Bazan–Reyes*, however, the INS commenced expedited removal proceedings against the petitioner in 1999, after the effective date of the IIRIRA. In that respect, *Bazan–*

---

**11.** The difference between exclusion and deportation proceedings is discussed in § III.B, of this Memorandum, *supra*.

*Reyes* is virtually identical to the present case. Here, as in *Bazan–Reyes,* petitioner was paroled into the United States, committed a crime defined as an "aggravated felony" after the effective date of the IIRI-RA, and then was placed in expedited removal proceedings.

The Court concludes that § 1228(b) clearly applies to an alien in petitioner's circumstances. There is no basis in law for concluding that the statute does not apply to parolees. Petitioner's crime of conviction—bank fraud—is an aggravated felony that was committed after petitioner's arrival in the United States. *See Sharma v. Ashcroft,* 57 Fed.Appx. 998, 2003 WL 550109 (3d Cir.2003) (not precedential) (concluding that BIA's interpretation that bank fraud statute 18 U.S.C. § 1334, was aggravated felony if loss exceeded $10,000 was reasonable); *Alaka,* 225 F.Supp.2d at 555 ("Because the crime of bank fraud is a crime of moral turpitude, Alaka was detained as inadmissible."); *Koifman v. Zemski,* Civ. A. No. 01-2074, 2001 WL 1167541, at *1 n. 1 (E.D.Pa. July 31, 2001) (same). Thus, the INS properly utilized the expedited removal proceedings of 8 U.S.C. § 1228(b) in this case.

**B. THE EXPEDITED REMOVAL PROCEEDINGS OF 8 U.S.C. § 1228(B) COMPORT WITH DUE PROCESS**

Petitioner alternatively argues that, even if the Court concludes he was properly placed in expedited removal proceedings under 8 U.S.C. § 1228(b), application of that section in this case violates his procedural due process rights. First, petitioner contends that the opportunity be heard under the statute is inadequate because the expedited removal statute does not provide for any judicial review. Second, he contends that the response time allowed after the receipt of notice of the charges is inadequate. Third, he contends that the expedited removal order prevents him from returning to the United States "at any time" and, therefore, violates his due process rights. *See* Petition at 15–21.

■ This Court has concluded in § IV.A.1 of this Memorandum, *supra,* that petitioner was paroled into the United States. Because a paroled alien is on the same legal footing as an immigrant seeking admission to the United States, *see supra* note 1, petitioner is not entitled to the same constitutional protections provided to aliens considered to be within the territorial jurisdiction of the United States. " 'Whatever the procedure authorized by Congress is, it is due process as far as an alien denied entry is concerned.' " *Shaughnessy v. United States ex rel. Mezei,* 345 U.S. 206, 212, 73 S.Ct. 625, 97 L.Ed. 956 (1953) (quoting *United States ex rel. Knauff v. Shaughnessy,* 338 U.S. 537, 544, 70 S.Ct. 309, 94 L.Ed. 317 (1950) and citing *Ekiu v. United States,* 142 U.S. 651, 660, 12 S.Ct. 336, 35 L.Ed. 1146 (1892)); *Chi Thon Ngo,* 192 F.3d at 396. Guided by the foregoing authority, the Court will examine the expedited removal proceedings challenged by petitioner.

■ An alien in expedited removal proceedings under 8 U.S.C. § 1228(b) is not entitled to a hearing before an immigration judge. However, the alien is entitled to:

- "reasonable" notice of the charges and of the opportunity to inspect the evidence and rebut the charges;
- be represented by counsel, at no expense to the government;
- a determination for the record that he or she is, in fact, the alien named in the notice; and
- a record of the proceedings.

8 U.S.C. § 1228(b)(4)(A)-(E); 8 C.F.R. § 238.1(b)(2)(I).

The INA sets forth a list of offenses that constitute aggravated felonies, *see* 8 U.S.C. § 1101(a)(43), and the regulations implementing 8 U.S.C. § 1228(b) specify the documents required to establish the aggravated felony conviction, *see* 8 C.F.R. § 238.1(b)(iii). Once the aggravated felony conviction is proved, the alien is "conclusively presumed to be deportable." 8 U.S.C. § 1228(c). Additionally, the final expedited removal order must not be adjudicated by the same person who issued the charges. *See* 8 U.S.C. § 1228(b)(4)(F).

The regulations implementing 8 U.S.C. § 1228(b) also provide, in appropriate situations, for conversion of expedited removal proceedings under 8 U.S.C. § 1228(b) to regular removal proceedings with a hearing before an Immigration Judge under 8 U.S.C. § 1229a. Specifically, under 8 C.F.R. § 238.1(c)(1) and (2), upon being served with the Notice of Intent, an alien is entitled to respond to the charges by submitting a written rebuttal, and to review the INS's evidence supporting the charge. If an alien's timely rebuttal to the notice of charges "raises a genuine issue of material fact regarding the preliminary findings, the deciding [INS] officer may either obtain additional evidence from any source, including the alien, or cause to be issued a notice to initiate removal proceedings under section 240 of the Act [8 U.S.C. § 1229a]."

8 C.F.R. § 238.1(d)(2)(ii)(A). If additional evidence demonstrates

> the alien is not amenable to removal under section 238 of the Act[, 8 U.S.C. § 1228], the deciding [INS] officer shall terminate the expedited proceedings under section 238 of the Act[, 8 U.S.C. § 1228] and shall, where appropriate, cause to be issued a notice to appear for the purpose of initiating removal proceedings before an immigration judge

> under section 240 of the Act[, 8 U.S.C. § 1229a].

8 C.F.R. § 238.1(d)(2)(iii).

### 1. The Opportunity to be Heard Under 8 U.S.C. § 1228(b) is Adequate and Comports with Procedural Due Process

Petitioner does not argue that the INS failed to comply with the expedited removal proceedings of 8 U.S.C. § 1228(b). Rather, he argues that the statute is unconstitutional because 8 U.S.C. § 1252(a)(2)(C) precludes any judicial review where the final order of removal is against an alien "who is removable by reason of having committed" an aggravated felony. *See* Petition at 15–21.

8 U.S.C. § 1252(a)(2)(C) provides, *inter alia*, that "[n]otwithstanding any other provision of law, no court shall have jurisdiction to review any final order of removal against an alien who is removable by reason of having committed a criminal offense covered in . . . [8 U.S.C. § 1227(a)(2)(A)(iii) . . . ."] 8 U.S.C. § 1252(a)(2)(C). Section 1227(a)(2)(A)(iii) refers to only one category of offenses— aggravated felonies.

The fact that Congress sought to limit judicial review of final removal orders of aliens convicted of aggravated felonies, however, does not mean that such review is totally unavailable. First, the jurisdiction-stripping provision in 8 U.S.C. § 1252(a)(2)(C) comes into play only when: "(1) the petitioner is an alien (2) who is deportable by reason of having been convicted of one of the enumerated offenses." *Drakes v. Zimski*, 240 F.3d 246, 247 (3d Cir.2001). The Third Circuit has held that the Courts of Appeal have jurisdiction "to determine whether these jurisdictional facts are present." *Id.* Thus, petitioner could have sought review in the Third Circuit to determine whether his offense of

conviction—bank fraud—constituted an aggravated felony. Second, notwithstanding the jurisdiction-stripping provisions in 8 U.S.C. § 1252(a)(2)(C), it is well-settled that aliens challenging final orders of removal may seek review of questions of law by habeas corpus. *See* § III.A, *supra* (holding that federal courts retain jurisdiction under 28 U.S.C. § 2241(c) to decide habeas petitions filed by criminal aliens subject to deportation or removal); *see also Calcano–Martinez v. INS*, 533 U.S. 348, 351–52, 121 S.Ct. 2268, 150 L.Ed.2d 392 (2001) (construing jurisdiction-stripping provisions of 8 U.S.C. § 1252 not to preclude aliens from pursuing habeas relief pursuant to 28 U.S.C. § 2241); *Zayas v. INS*, 311 F.3d 247, 253 (3d Cir.2002) ("28 U.S.C. § 2241—the 'primary federal habeas corpus statute,' *Zadvydas v. Davis*, 533 U.S. 678, 687, 121 S.Ct. 2491, 150 L.Ed.2d 653 (2001)—is the vehicle by which an alien who is in custody may seek judicial review of INS actions that affect the alien's status." (citing *St. Cyr*, 533 U.S. at 308, 121 S.Ct. 2271, *Chmakov v. Blackman*, 266 F.3d 210, 213 (3d Cir.2001), and *Liang v. INS*, 206 F.3d 308, 320–21 (3d Cir.2000))).

The primary legal issue presented in an expedited removal proceeding under § 1228(b)—whether an offense committed by an alien qualifies as an aggravated felony—is cognizable under § 2241. *See, e.g., Bazan–Reyes*, 256 F.3d at 605–06 (considering issue whether driving while intoxicated, in violation of state law, was aggravated felony). Moreover, as this Court also already has noted in § III.A of this Memorandum, *supra*, petitioner's constitutional arguments are also cognizable in habeas proceedings under § 2241.

Because the Third Circuit has jurisdiction to determine whether jurisdictional facts are present to invoke the jurisdiction-stripping provisions of 8 U.S.C. § 1252(a)(2)(C), and because § 2241 preserves judicial review of INS administrative determinations of an alien's status, the Court rejects petitioner's argument that there is no opportunity for judicial review of a final administrative removal order of an aggravated felon. In this respect, § 1228(b) provides all the process to which petitioner is due.

### 2. The Response Time Provided Under 8 U.S.C. § 1228(b) is Adequate and Comports With Procedural Due Process

Petitioner also argues that the ten-day response time provided for in § 1228(b) violated his due process rights because it was too short to enable him to formulate a proper response. Petitioner claims that if he were "granted a reasonable amount of time to respond to the charges against him," the INS would have concluded that he was wrongly placed in the expedited removal proceedings and, accordingly, the INS would have terminated the proceedings.

The Court finds petitioner's arguments to be unpersuasive. Petitioner points to no evidence to support his argument that the ten-day response time prevented him from formulating a proper response. Moreover, as the Court has noted in § IV.B of this Memorandum, *supra*, the expedited removal proceedings and the implementing regulations provide for notice to the alien, an opportunity for the alien to respond and a transfer to regular removal proceedings if the alien's rebuttal raises a genuine issue of material fact regarding the INS's preliminary findings. Where, as in this case, a petitioner fails to identify a ground for relief that would have been available had he been afforded the process he seeks, there can be no procedural due process violation. *See, e.g., Thompson v. Reno*, Civ. A. No. 99–5551, 2000 WL 361675, at *3 (E.D.Pa. Apr. 5, 2000) (hold-

ing that BIA's failure to transmit briefing schedule and transcripts prevented him from timely filing appellate brief did not violate alien's procedural due process rights where alien had not identified "any plausible ground for relief" that would have been available to him, even assuming his due process rights had been violated). Thus, the Court cannot conclude that the ten-day response time violated defendant's procedural due process rights.

### 3. *An Alien Removed From the United States as an Aggravated Felon is Inadmissible to Return at Any Time*

■ Finally, petitioner argues that his due process rights were violated by the expedited removal order because it prevented him from returning to the United States "at any time." The Court rejects this argument. An alien removed because of an aggravated felony conviction is prohibited from legally returning to the United States at any time, regardless of whether the removal order resulted from expedited removal proceedings under 8 U.S.C. § 1228(b) or regular removal proceedings under 8 U.S.C. § 1229a. *See id.* It is not the expedited removal order that prevents petitioner from returning to the United State "at any time;" rather, it is petitioner's status as an aggravated felon. The same result would have occurred had petitioner been placed in regular removal proceedings under 8 U.S.C. § 1229a.

### V. *CONCLUSION*

The expedited removal proceedings of § 1228(b) are applicable to petitioner and that statute comports with due process. Thus, the Petition for Writ of Habeas Corpus filed by petitioner, Karim Bamba, is denied.